*Eastern Dis.*
*March, 1833.*

OHIO
INSURANCE CO.
*vs.*
EDMONDSON
ET ALS.

APPEAL FROM THE PARISH COURT OF THE PARISH AND CITY OF NEW-ORLEANS.

It is unnecessary for a party to swear to the facts stated in a supplemental petition praying a sequestration, if he has sworn to the same facts stated in his original petition.

A contract made in one state or country will be enforced in another unless injury is thereby directly or indirectly done to the inhabitants of the latter.

A bill of exceptions to the introduction in evidence of a deposition on the ground that it has not been legally taken, is too general to authorise the Supreme Court to examine the validity of the official seal to the deposition of the officer by whom it was taken.

Where maritime interest is reserved, both principal and interest must be risked to confer upon the obligation the character of a bottomry bond.

A foreign creditor who has a lien on property is entitled to an equal privilege with a domestic creditor.

EASTERN DIS.
March, 1833.

OHIO
INSURANCE CO.
vs.
EDMONDSON
ET ALS.

A written contract, which has not the character of a bottomry bond, but which has been entered into for the loan of money, and confers an express lien on a vessel, cannot by the maritime law, follow her into other countries to the prejudice of rights acquired there.

This action was brought in 1830, for the recovery of the sum of six thousand nine hundred and sixty dollars, due on an instrument alleged to be a bottomry bond, upon the steamboat Walter Scott, then in the port of New-Orleans.

The bond was made in 1829, at Cincinnati, and signed by James Tallant, W. D. Jones, Joseph Pierce and Thomas Carneal; the first as principal, and the others as his sureties. Its first clause is as follows: "Know all men by these presents, that I, James Tallant, of the city of Cincinnati, Ohio, owner of the good steamboat called the Walter Scott, now lying on the stocks at Cincinnati, (to be launched at my risk as soon as the water will permit,) and necessitated at this time to borrow and take up upon the adventure of said steamboat, the sum of six thousand dollars, for the profitable and advantageous sailing of said boat for the period of one year from the date hereof, which said sum of money the Ohio Insurance Company have, on my request, *lent unto me and supplied me with, at the rate of nine hundred and sixty dollars for the said six thousand dollars, for the said period of one year* from the date hereof."

The bond also contained the following clauses: "I, the said James Tallant, do hereby bind particularly all my right, title and interest in and to the said steamboat, with the freight, tackle and apparel of the same, to pay unto the Ohio Insurance company, the sum of sixty-nine hundred and sixty dollars in one year from the date hereof." "The said boat shall at all times after the expiration of the said period of one year from the date hereof, be liable and chargeable for the payment of the said sixty-nine hundred and sixty dollars, according to the true intent and meaning of these presents; and that it shall be lawful for the said Ohio Insurance Company, by their properly authorised agent or agents, on failure to pay to the said Ohio Insurance Company, the said sum of

sixty-nine hundred and sixty dollars, within the said period of one year from the date hereof, forthwith to enter upon take possession of, and sell at auction, or otherwise, as the said Ohio Insurance Company may judge proper, the said steamboat, and from the avails of such sale, as far as they may go, to pay and satisfy the said debt, with all reasonable and proper costs and charges that may be incurred thereby."

EASTERN DIS.
March, 1833.

OHIO
INSURANCE CO.
vs.
EDMONDSON
ET ALS.

In case the boat should be lost during the year, it was agreed, "that then and thenceforth, that *every act, matter and thing herein contained* on the part of the said principal and sureties, except the payment to the said Insurance Company, of the sum of nine hundred and sixty dollars, *shall be void*."

The plaintiff averred, that this alleged mortgage was endorsed on the enrolment of the boat, and was known to all subsequent purchasers and claimants.

The defendant, Edmondson, pleaded his title to the boat by purchase at Louisville, at a public sale, ordered by a court of chancery. He also pleaded usury, and the incapacity of the plaintiffs to enter into such a contract.

The Parish Court decided that the bond created a lien on the boat; that Edmondson knew of its existence when he purchased; and, deducting the claims proved for provisions and services rendered, the court ordered that out of the balance of the proceeds of the boat, which had been sold, by consent of parties, during the pendency of the suit, the plaintiffs should be paid. Edmondson appealed.

*Hennen, Peirce* and *Hawes*, for appellant.

*Preston* and *Hoffman*, for appellees.

1. The bottomry bond gave a lien on the steam boat Walter Scott, in favor of the plaintiffs. 2 *Blackstone's Commentaries,* 457. *Marshall on Insurance, p.* 632.

2. The boat was sold subject to that lien, both by the laws of Kentucky, and in point of fact; because the sale did not arrest the lien.

EASTERN DIS.
March, 1833.

OHIO
INSURANCE CO.
vs.
EDMONDSON
ET ALS,

3. The statute of Kentucky is not applicable; it applies to property situated in a county and conveyances in the state; it would be absurd to apply it to a steamboat which may be in twenty counties in as many hours.

4. She had not been at Louisville sixty days.

5. Hypothecation of vessels not required to be recorded in the mortgage and parish judge's office; *Code, art.* 3362; or must be recorded in every parish.

6. It must be made and recorded according to the laws and usages of commerce. *Article* 3272. The usage is to record it in the custom house.

7. The case being one which the statutes of no state contemplate to provide for, must be governed by the agreement and conduct of all the parties. Our agreement gives a lien and interest on the steam boat. Our notice to Edmondson gives us all equity against him; he gave only fifteen hundred dollars for the vessel, which was, he perfectly understood, six thousand dollars less than he would have paid, but that she was subject to our lien.

PORTER, J. delivered the opinion of the court.

The parties really litigant before this court are the plaintiffs, and the defendant, Edmondson. The former claim a lien on an instrument of writing executed by Tallant, the original owner of the boat, in the State of Ohio. The latter sets up title to her under a sale made in the state of Kentucky, in virtue of a decree of one of the courts of chancery of that state.

It is unnecessary to set out the pleadings, for after any detailed statement of them, they would only exhibit what has been already stated, as the substantial issue between the parties.

Before, however, entering into the merits, one or two questions relating to the regularity of the proceedings, present themselves for decision, and must be disposed of.

The suit commenced by a service of the petition and citation on the defendant, Edmondson, and there was a prayer

EASTERN DIS.
*March*, 1833.

OHIO
INSURANCE CO.
*vs.*
EDMONDSON
ET ALS.

for a provisional seizure. After service of the original petition, a supplemental one was filed, in which the plaintiffs stated, they were obliged to ask for a sequestration of the boat. It was granted on an affidavit of their agent, in which he declared, that the allegations contained in the petition heretofore filed were true.

It is objected, that the allegations in the supplemental petition on which the writ of sequestration issued, are not sworn to, and that consequently the writ improvidently issued. However correct such an objection might be, in case the prayer for a sequestration rested on the facts set out in a supplemental petition, the court is of opinion the objection is not well founded in that now before it. In the supplemental petition, the plaintiffs allege no new facts; they on the contrary refer to the original petition, and make it the basis of their demand for a sequestration. The affidavit, therefore, of the agent repeating the averment of the truth of the allegations on which the plaintiffs claimed a lien on the boat, was the only one which could have been properly made; if indeed any were necessary, after the oath previously taken by him, to the truth of the facts stated in the original petition.

It is unnecessary for a party to swear to the facts stated in a supplemental petition praying a sequestration, if he has sworn to the same facts stated in his original petition.

But a more formidable objection has been raised against the regularity of the proceedings. The statutes and jurisprudence of Louisiana, it is contended, only confer the privilege of sequestration to enforce liens given by its laws; and that, in aid of which this remedy was extended here, was not one that had any force, or conferred any privilege in our state, though it might have that effect in the country where it was made.

By the comity of nations a practice has been adopted by which courts of justice examine into, and enforce contracts made in other states, and carry them into effect according to the laws of the place where the transaction took its rise. This practice has become so general in modern times, that it may be almost stated to be now a rule of international law, and it is subject only to the exception, that the contract to which aid is required should not, either in itself,

A contract made in one state or country will be enforced in another, unless injury is thereby directly or indirectly done to the inhabitants of the latter.

OHIO
INSURANCE CO.
*vs.*
EDMONDSON
ET ALS.

or in the means used to give it effect, work an injury to the inhabitants of the country where it is attempted to be enforced.

The objection now taken raises a distinction in cases so circumstanced, between remedies before and after judgment; and we confess we are unable to see any solid grounds on which it can rest. If it be true, as we apprehend it is, that the court can and should enforce the personal obligation which a party, not a citizen of the state, may have entered into in another country, and that on the judgment so rendered, the foreign creditor could obtain the benefit of all writs of execution which an inhabitant of Louisiana might resort to against a domestic debtor, then we can see no good ground for refusing the auxiliary process in the first instance; whether it be an order to arrest the person of the debtor, and hold him to bail, or a writ to seize the property brought within the jurisdiction of a court, if it be the subject of contest. Both seem to rest on the same principles. And a familiar illustration of the common received opinion on this subject, may be given in the case of attachments, which are almost every day resorted to in aid of the foreign creditor against the foreign debtor; and yet there is nothing in our law more expressly giving that remedy to the stranger, than there is in the case of sequestration.

We, therefore, think the writ properly issued, and that the property seized under it, must abide the decision on the merits.

A bill of exceptions to the introduction in evidence of a deposition on the ground that it has not been legally taken, is too general to authorise the Supreme Court to examine the validity of the deposition by whom it was taken, and not to him of the official seal of the officer by whom it was taken.

There was a bill of exceptions taken to the introduction in evidence of depositions taken in the state of Ohio. The objection made here is, that the return to the commission is under the official seal of the mayor; and that the *Code of Practice* requires it to be under the private seal of the commissioner. It is unnecessary to say what weight this objection is entitled to in a case where the commission is directed, as in this instance, to a public officer by his title, and not to him personally; for no objection was made on the ground taken here in the court of the first instance. The reasons given in the bill of exceptions are, that the depositions had not been

legally taken.   This is too general;  it is the duty of the party   Eastern Dis.<br>*March*, 1833.
to put his finger on the particular defect.

On the merits of the case, there is much more difficulty   OHIO<br>INSURANCE CO.<br>*vs.*<br>EDMONDSON<br>ET ALS.
than in the points just disposed of.   The plaintiffs, as we have
already stated, claim a privilege on the boat in consequence
of a contract entered into in the state of Ohio, with her then
owner.   By the instrument which evidences this contract, it
appears, the plaintiffs lent him the sum of six thousand dollars,
for the use of which for one year he was to pay nine hun-
dred and sixty dollars.   The boat was to be navigated on
the waters of the Ohio and Mississippi rivers .during that
time; a lien or privilege was given on her for the payment of
the debt and interest; and it was stipulated that in case she
was lost during the period just mentioned, the sum of six
thousand dollars should not be demanded or recoverable
from the debtor, but that the interest might.

It has been a subject of debate at the bar, whether this   Where maritime<br>interest is reser-<br>ved, both princi-<br>pal and interest<br>must be risked to<br>confer upon the<br>obligation the<br>character of a bot-<br>teny bond.
was not a bottomry bond.   It certainly has many of the fea-
tures of one; but we are inclined to the opinion that it can-
not be considered such.   Whether a bottomry bond may not
be made to secure a sum of money lent with legal interest,
payable at all events, seems to be a question not yet per-
fectly settled.   But where maritime interest is reserved, the
weight of authority appears to greatly preponderate in favor
of the position, that both principal and interest must be put at
risk.   *See Story's Abbott*, 125.   4 *Binney*, 244.  *Park on
Insurance*, 416.

The plaintiffs' right to recover must therefore be found,
if it exists at all, elsewhere than in the maritime law.   He
contends, however, that although the instrument may not con-
fer the privilege of a contract governed by its rules, still by
the laws of the state of Ohio, where it was executed, it gave
a mortgage or lien on the boat, and that this lien existed on
and attached to her when she was sold in Kentucky.   In sup-
port of this position we have been referred to testimony taken
in Cincinnati, and it certainly covers the whole ground
which the plaintiffs have taken in argument.   Possessing no
knowledge of these laws ourselves, and not having the means

EASTERN DIS.
March, 1833.

OHIO
INSURANCE CO.
vs.
EDMONDSON.
AT ALS.

of acquiring a knowledge of them except through the means resorted to, in this instance the proof furnished to us must guide and control our opinions. The evidence of the principal witness, by whom these facts are established, has been closely observed on, and our attention has been drawn to an acknowledgment made by him that he expected a fee from the Insurance Company, for the trouble he had taken in investigating the case. We cannot say that this circumstance authorises us to refuse credit to this deposition. The evidence itself carries in it internal evidence of fairness and truth. It appears to come from an intelligent man, and we are bound to presume one learned in his profession. Members of the bar in all countries, are in the habit of receiving compensation for their opinions. The fact of their doing so is never considered as impairing the weight justly due to these opinions, and the respect to which they are entitled, obviously is much increased when they are given under the solemnity of an oath. A servant under a salary from one of the parties, or an agent who receives compensation in the very case at issue, is a good witness, if his compensation does not depend on the event of the suit. But what weighs with us more than all this, in according full faith and credit to the testimony of the witness, is, that his deposition was returned into court in November, 1830; that the cause was not tried until May, 1831; and that if the defendant knew, or had reason to believe, the witness had mistaken the law, or mistated it, there was ample time to procure rebutting testimony.

If the Steamboat then, had remained within the State of Ohio, the evidence satisfies us, the plaintiffs could have had a lien on her. But the main difficulty in the cause still remains. She was sold in the State of Kentucky, under a decree of one of the courts of that state, and purchased by the defendant at the sale. It is admitted on all hands, that this sale was legal and regularly made, and the question is not, what was the effect of the lien in the county where the contract was made, nor in that where it is sought to be enforced, but what effect it had in the state where the defendant acquired title to the property.

The statutes of the State of Kentucky, the decisions of her courts, and the testimony of witnesses, possessing a knowledge of her laws, have been introduced in evidence. Reliance was placed in argument, on the fact of an agent of the plaintiffs having attended the sale at which the defendant purchased, and on his having given notice of the lien which his principals claimed on the boat. A decision of the Supreme Court of that State, has declared that notice to the purchaser at sheriff's sale, is not sufficient to enable the creditor to afterwards enforce his lien on the property sold, unless it is also shown, the creditor, at whose suit the sale took place, had notice of its existence at the time the debt was contracted. Other testimony taken in the cause, shows this to be the settled jurisprudence of that state, and the rule thus established is decisive of this part of the case. *Helen* vs. *Logan's heirs,* 4 *Bibb,* 78.

According to the testimony, it is shown that the courts of Kentucky would consider the bond on which this suit is instituted, though made in Ohio, a lien on the boat, and that in the language of the witness, it would operate on all persons who had notice of its existence, whether by record or otherwise.

By an act of the General Assembly of the State of Kentucky, approved 11th February, 1830, it is declared that no deed of mortgage or deed of trust, hereafter made or executed for or upon any real or personal estate, shall be good or valid against a purchaser, for a valuable consideration, without notice thereof, or against any creditor, unless such deed shall within sixty days after the acknowledgment or proof by two subscribing witnesses according to the existing laws, be deposited for record in the office of the County Court Clerk of the County, where the estate therein conveyed, or the greater part thereof, lies.

The State of Kentucky, we presume, gives effect to liens existing on property brought there from another country, on the principle of amity which we have already noticed, and we must also presume, until the contrary be shown, that she admits them with the same limitation which other states do; namely, that they shall not work an injury to her own citi-

EASTERN DIS.
March, 1833.

OHIO
INSURANCE CO.
vs.
EDMONDSON
ET ALS.

A foreign cred-
itor who has a lien
on property, is en-
titled to an equal
privilege with a
domestic credi-
tor.

zens.  To ascertain whether they do or not, recurrence must be had to her laws and policy in relation to contracts made within her limits; for we take the true principle in such cases to be, that the foreign creditor who has a lien, should have no greater or no less privilege, than the domestic creditor.  If, for example, the laws of Kentucky required no record to be made of liens given on personal property within the state, she would not require registry on the part of the stranger who came there to enforce a mortgage on property, on which he had a lien in another country; for if she did, she would neither carry the contract into effect, according to the law of the country where it was made, nor according to her own.  If this be true, whatever time is given to the domestic creditor to record his lien, should be given to him who comes from another state with one, if his lien be recognized as valid when enregistered, and his prayer to enforce it be admitted, as we are told by the testimony it could be.

On this principle, the plaintiffs have contended, they had sixty days to record their mortgage after the property was carried into the state where it was sold.  The statute, we have already seen, requires the lien to be recorded within sixty days after it is given in the county where the property is situated.  One of the judges of the State of Kentucky, has been interrogated under a commission, whether, in his opinion, this delay of sixty days, applies to cases where the property is not yet within the limits of the state, and he has replied, that he is unable to answer the question.

The difficulty which this learned person found in the question, has been fully shared by us.  After the best consideration in our power, we, however, think, that if it be true as it is testified to us, that the lien existing on this boat would affect creditors and purchasers in the State of Kentucky, if duly recorded, it would seem to follow that the creditor's obligation to record, could only commence at the period she came within the state.  The words of the statute are, that the act giving the lien, "must be deposited for record in the office of the County Court Clerk of the County where the estate lies."  A record, therefore, in any other county would

not suffice, nor would a registry where the property was not, but where it might thereafter be, comply with the requisitions of the statute.

If then, the record could not be made pursuant to the act of Assembly, until the property was brought within the state, we conclude that the creditor had the delay of sixty days to make it. In all other cases, it is sufficient to enregister within that delay, after the lien has attached on property. Here the mortgage did not attach until the boat was brought within the state.

This decision eminently promotes the equity and justice of the case. One witness swears, and he is uncontradicted, that the boat at the time of the sale was worth nine thousand dollars. She was first stricken off to a bidder, who had been advised the lien of the plaintiffs did not bind her for seven thousand dollars and some dollars. Finding afterwards, there was a great diversity of opinion among legal men on the effect the mortgage might have, he declined complying with his bid, and the boat being put up at auction again, she was purchased by defendant for one thousand five hundred dollars. Under such circumstances, no one, we think, can doubt the defendant obtained her at that price, under a belief she was subject to the lien, and if any one could doubt it, that doubt is removed by the fact, that she sold in this city since the institution of the present suit, for eight thousand four hundred dollars.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled, avoided and reversed; and it is further ordered and decreed, that the plaintiffs do recover from the defendant, the sum of six thousand nine hundred and sixty dollars, to be paid in preference, out of the proceeds of the sale of the steamboat Walter Scott, with costs in both courts.

EASTERN DIS.
*March*, 1833.

OHIO
INSURANCE CO.
*vs.*
EDMONDSON
ET ALS.

### SAME CASE.

The preceding opinion was delivered at the last May term, and a motion for rehearing was made on the following grounds, by *Hennen* and *Peirce*, for appellants.

1. That no judgment can be rendered, to divest Edmondson of his property, because of a debt due by *Tallant*, until judgment be rendered against *Tallant*. He may have paid, the agreement being private and without witnesses, may have been as privately annulled; in this case, *Tallant, the debtor, and only debtor*, has not been made a party.

2. That no proof, other than a private deed not witnessed, has been adduced to show, that six thousand dollars have been actually paid by the plaintiff to Tallant, it is good against him, but not against Edmondson.

3. Because if the rule be, that the creditor has sixty days from the first coming of the property into the State of Kentucky, to prove the reality of the deed by witnesses or acknowledgment, and record said proof or acknowledgment in the clerk's office, this does not aid the plaintiff, for the steamboat Walter Scott was twice before at Louisville, in May and in June, 1829, when she came there from New-Orleans, and took in cargo.

*Preston* and *Hoffman, contra.*

1. The rule of this court, which requires the parties to file the points and authorities on which they intend to rely, provides, that "no rehearing shall be granted on any points which the parties may have omitted to furnish, in compliance with this rule." The defendants omitted to furnish any points in compliance with this rule. A rehearing, therefore, cannot be granted. As well might a party ask for a new trial, without showing due diligence on the first trial.

2. James Tallant was made a party by the petition, answer, proceedings, evidence, and judgment, below.

EASTERN DIS.
*March*, 1833.

OHIO
INSURANCE CO.
*vs.*
EDMONDSON
ET ALS.

