### Same Case—Application for a Re-hearing.

*C. M. Jones,* for a re-hearing. The court has decided that in all cases where a lien or privilege is claimed upon property, whether personal or otherwise, the party claiming that privilege and wishing to enforce it, as provided for by the amendment of the Code of Practice passed April, 1826, must make the affidavit required of those claiming a sequestration of property specially mortgaged to them, as provided for in the 6th section of art. 275 of the Code of Practice, thus putting property not susceptible of being mortgaged, upon the same footing with immovable property, although the five preceding sections of the same article, make a marked distinction between the affidavit necessary to obtain a sequestration of personal property, and property capable of being specially mortgaged. To support this decision the case of *Debaillon* v. *Ponsony,* 5 N. S. 43, decided in the Western District, in August, 1826, is solely relied on.

The correctness of that decision is not impugned, but it is inapplicable to the case now before the court; and the error which I think the court has fallen into, is, in not drawing the distinction between property capable of being mortgaged, and personal property.

There are but two species of property capable of being *specially mortgaged,* land with the growing crops thereon, and

slaves. There can be no other case in which an affidavit to sequester property, should comply with the requisites of the 6th section of article 275.

The case of *Debaillon* v. *Ponsony,* was one of these, and the affidavit in that case, must have been made previous to the amendment of April, 1826, for the suit was finally decided in August, 1826, too short a time for it to have been made after the passage of the act.

It appears that Ponsony was the tutor of Debaillon, appointed more than two years previous to the institution of the suit. He was, therefore, appointed under the old Civil Code, and his property was liable for his administration of the minors' estate, according to the provisions of the law as they then existed. Now by a reference to page 454, art. 15, of the old Civil Code, and to the case of *Winchester* v. *Thibodeaux' Ex'rs.* (8 La. 192), it appears there existed in favor of a minor, on all the property of his tutor, from the day of his appointment, a mortgage, or, in other words, that the property of the tutor was specially mortgaged for the faithfulness of his administration. This then was a case under the 6th section of art. 275, and the sequestration would have been maintained, even if the amendment of April, 1826, had never been passed. That such an affidavit should be required where slaves specially mortgaged are sought to be sequestered, is reasonable and just, for it would be hard indeed if the owner should be barred of the privilege of removing his slaves, before the debt became due, from one parish to another, because the party holding the mortgage or lien, in order to keep the slaves subject to the final decision of the court, can do so, by merely recording his mortgage in the parish to which the slave may be removed, and his mortgage being so recorded, no other creditor can deprive him of the lien and privilege which his special mortgage gives him, and this is the sole reason why the affidavit is required; but with personal property this lien or privilege can not be so preserved.

The Code of Practice enumerates six different cases in which the writ of sequestration may issue. Art. 276 says that an affidavit must be filed, setting forth the cause for which the order is claimed, and that bond and security must be given be-

fore the issuing of the sequestration. In these sections there is *but one* that requires that the affidavit must state the apprehension of the property being removed out of the State, and one that it will be removed out of the jurisdiction of the court; the other four require nothing more than the reasons for which the sequestration is required. This being the law, how can it be said that the act of 1826, which was passed for extending the cases in which a writ of sequestration might issue, should be so construed as to limit it, and, in some cases to destroy it altogether; and why is this 6th section thought so peculiarly applible to the amendment of 1826, when it speaks merely of *property specially mortgaged,* and the other five sections refer to both personal and immovable property, and the act does not set forth any particular form of affidavit to be made.

The amendment of April, 1826, *extended* the right to sequester to all cases where there existed a lien, or privilege, upon a compliance with the requisitions of law, and in 1839 it was farther extended to all cases where a party fears that the other will conceal, part with, or dispose of the moveable or slave in his possession, during the pendency of the suit, upon his complying with the requisitions of the law. The words " upon his complying with the requisitions of the law" are used in both amendments, and what they mean in one they must necessarily mean in the other. The court has decided that those words mean, that the affidavit must state the apprehension that the property sought to be sequestered is about to be removed out of the State. I conceive that no other construction can be put upon them than, that the cause for which the order is claimed should be set forth, and bond and security be given, as required by art. 276.

If the construction of the court be right, what would have been the effect between April, 1826, and the amendatory act of 1839, and what since?

A ship builder repairs, or builds a tow-boat or ferry-boat which never leaves the State, or even the jurisdiction of the court, yet he has a privilege on the boat for the price of his labor. Suppose, after the delivery of the boat and the lapse of sixty days, judgments are obtained, and executions about to be levied on the boat which would deprive him of his lien and

privilege—what must he do ? Of what avail would his privi-
lege be to him, if denied the right of using it—if before it can be
used he must make an affidavit, which would be false upon the
face of it ? Suppose that previous to the act of 1839, the owner
of the boat was about to make a sale of her, what was the pri-
vileged creditor to do ? He has a lien, and privilege by the act
of April, 1826, but if he attempts to enforce that lien and privi-
lege, and, by so doing breaks off the sale, he will have to pay
damages for it. Instead of extending the benefits of the writ
of sequestration, such a construction would utterly destroy it.
Again : as the words " requisitions of the law," used in the act
of 1839, cannot, by any construction whatever, mean that the
affidavit must be in conformity with the 6th section of art. 275,
why should the same words be considered as having a different
meaning when used in the act of 1826 ? See on this subject 1
Rob. 531.

A contractor to fill up a lot in the city of New Orleans has a
privilege thereon (7 Mart. N. S. 17), but no special mortgage.
Can it be pretended that, if he wishes to sequester, finding that
the property is about to be sold, he must swear that the lot is
about to be removed out of the State of Louisiana, and give his
reasons for so believing ?

The 6th section of article 275 applies solely to slaves, and to
growing crops, and must be confined to them, and to them only.

In the case of *Prall* v. *Peet's Curator* (3 La. 274), where the
property sequestered was in the hands of the sheriff, the court
refused to set aside the sequestration, and declared it lawful un-
der the amendment of April, 1826, giving a right to a writ of
sequestration where there was a lien and privilege, although
the affidavit did not state that the property was about to be remo-
ved out of the State, or even beyond the jurisdiction of the court,
but merely stated the reasons why the sequestration was called
for, the party having complied with the requisitions of the law, by
giving bond and security. See the record in the Supreme Court,
no history of the case being given in the report. In no case
has such an affidavit been required, except where slaves and the
growing crops are sought to be sequestered. See 5 La. 345. 14
La. 266, 351, 536. 17 La. 211. In all of these cases, the rea-

son given for requiring such an affidavit was, that the property was mortgaged ; and now, since the act of 1839, even this is not required ; a party has but to swear, to obtain the sequestration, that the other will conceal, part with, or dispose of the slave or moveable in his possession during the pendency of the suit, and to comply with the requisitions of the law, that is, by giving bond and security. No possible case can now occur, in which it would be necessary, to obtain a sequestration, to make such an affidavit as is required by the 6th section of article 275, the amendments of 1839 covering every conceivable case.

Kelly & Co. had such a privilege or lien on the steamboat Angora, as is contemplated by the act of 1826. They state in their affidavit, that it was for the furnishing of supplies and necessaries for the use of the boat, as required by article 276 of the Code of Practice, and on the trial of the case they proved the allegations of their affidavit to be true, and judgment was rendered in their favor with *privilege* on the steamer. That the judgment giving this privilege was correct is indisputable ; that they had a right to sequester the steamboat is equally so. The only point to be decided is, whether they were bound to make an affidavit, as required by the 6th section of the article 275 of the Code of Practice.

SIMON, J. The defendants' counsel, in his petition for a rehearing, urges that the case of *Debaillon* v. *Ponsony* (5 Mart. N. S. 43), to which reference is made in our judgment, is not at all applicable to the present ; and he says that our opinion is erroneous, and that the error we have fallen into, is, in not drawing the distinction between property capable of being mortgaged and personal property.

On referring to the affidavit taken by his client for obtaining a writ of sequestration against the steamboat Angora, we see that *the only cause* for which the order was claimed, is, that said steamer and owner are justly indebted to the applicants in the sum of $438 75 due for goods, &c., *for the payment of which they have a privilege on said boat,* which they pray may be sequestered.

Now, by the terms of art. 276 of the Code of Practice, it is required that a plaintiff, who wishes to obtain an order of seques-

tration, in any one of the cases above enumerated, must annex to his petition, *an affidavit setting forth the cause for which he claims such order*, &c. ; and we have said in our judgment, that it is not the privilege that gives the right to sequester property, but the circumstance which prompts, or causes the creditor to apply for the writ, in order to preserve the property during the pendency of the action; and that such circumstance, or cause must be explicitly set forth in the affidavit.

By referring to art. 275, which contains the enumeration of the cases alluded to in art. 276, we find, that previous to the laws of 1826 and 1839, a writ of sequestration might be obtained in six different cases, and for six different causes. For instance : under sec. 2, when one sues for the possession of moveable property or of a slave, he may obtain the same to be sequestered, when he fears that the party having possession may ill treat the slave, or send either the slave, or the property in dispute out of the jurisdiction of the court, during the pendency of the suit. The latter part of this law, shows *the cause* that must be set forth in the affidavit of the applicant, and it is clear that the writ could not be ordered without showing the existence of such cause. Under sec. 6, a creditor *by special mortgage* has the power of sequestering the mortgaged property, when he apprehends that it will be removed out of the State before he can have the benefit of his mortgage, and will make oath to the facts which induce his apprehension ; and it is obvious that the existence of the special mortgage shown by the oath of the party, would not, in such case, be a sufficient cause for obtaining the issuing of the writ. Thus, the right upon which the action is based, is clearly made distinct from the cause for which the property upon which it is to be exercised is sought to be sequestered; and we have said in our judgment that, as under the law of 1826, when a plaintiff has a lien or *privilege* upon property, he may obtain a writ of sequestration of such property, on complying with the requisites of the law, we thought that such requisites, on the authority of the case of *Deballlon* v. *Ponsony*, where the question was fully investigated *as to a general and tacit mortgage*, and not, as the counsel says, with regard to a special one, ought to be the same as those required for obtaining the order on a special mort-

gage. In the case cited, and said to be inapplicable, Debaillon did not sue *as special mortgagee ;* he sued under the law of 1826, as having *a lien* on the property ; and, if a distinction is to be made between property capable of being mortgaged, and personal property, a distinction which is not made in the law, it seems to us that the legal requisites of sec. 6 of art. 275 would apply with greater force to personal property, which is more susceptible of being removed out of the State before the creditor can have the benefit of his privilege. The law of 1826, provides for two cases, *a lien* (such as a general mortgage), and *a privilege ;* and by a law of 1839, sec. 6 (Acts of 1839, p. 164), it is provided that, in addition to the cases mentioned in art. 275, *a sequestration may be ordered in all cases, when one party fears that the other will conceal, part with, or dispose of the moveable, or slave in his possession, during the pendency of the suit, on complying with the requisitions of the law.* Thus again, it is made necessary to show a circumstance, or fact beyond the simple right of action, to obtain the sequestration of the property. The cause for which the writ is claimed must be stated in the oath of the party who claims it ; and to say that a creditor, *on simply swearing to the existence of his privilege* on the property, without any cause, would be entitled to deprive his adversary of the use and possession of his property, and that, in all cases of alleged privilege, the oath of the party who seeks to enforce it, establishing that the right exists, without any other cause shown, would be sufficient to take the property from its legal owner at the very inception of the suit, would be too monstrous and preposterous a doctrine to be for a moment countenanced by us, or by any other tribunal. Here again, *no cause whatever* was shown, except the right of action. The Commercial Court and the District Court were both of opinion that the affidavit was insufficient ; and notwithstanding the attention we have bestowed on the counsel's reasons and authorities, on which we have been called on to grant a re-hearing, we have been unable, after the most mature deliberation and a thorough re-examination of the question, to come to any other conclusion. His client should have brought himself at least within the requisites of the law of 1839, if he could not do it according to the law of 1826,

in connexion, as it clearly is, with sec. 6 of art. 275; and not having done so, he had no right to claim the issuing of the writ, which, having been illegally sued out, was very properly set aside; and he must bear the consequences of his illegal act.

In the cases cited from 3 La. 274, 14 Ib. 266, 351 and 536, 17 Ib. 209, and 1 Rob. 531, in which the sufficiency of the affidavits was in question, this court invariably considered that it was necessary that a valid cause should be sworn to by the party applying for the writ, and that he should state the facts upon which such cause was founded, according to the laws governing the cases respectively. In the case of *Erwin* v. *Jones* (5 La. 344), it was held that the creditor is required to make oath of the facts which induce him to apply for the writ, and that such writ will not be issued where the affidavit states only that the plaintiff has *a lien* on the property in the defendant's hands. And in the case of the *Ohio Insurance Company* v. *Edmondson et al.* (5 La. 295), so much relied on as a case in point, and to the record of which we have been referred, the steamboat *Walter Scott* was sequestered, on the affidavit of the plaintiffs not simply that they had a privilege on the boat, but that *said boat was on the eve of leaving the jurisdiction of the court, and that said plaintiffs were apprehensive of losing the amount they claimed, should said boat depart previous to their demand being satisfied.* This was deemed to be sufficient, as a good and legal cause was shown, substantially amounting to that pointed out in art. 275, sec. 6, and the sequestration was maintained, although it had been prayed for in an amended or supplemental petition, referring to the original petition to which the affidavit was annexed.

In conclusion, let it be well understood that the party who prays for a writ of sequestration of his adversary's property, in order to preserve it during the pendency of the action and give effect to the suit which he has brought, or intends to institute against him, must bring himself within any one of the cases provided for by law; and that such writ, in its nature vexatious and extraordinary, ought not to be issued, unless, according to art. 276 of the Code of Practice, his affidavit sets forth the cause

for which he claims the order, as pointed out by the laws applicable to such different cases respectively.

The re-hearing is, therefore, refused.