4 452
46 480

## WILSON et al. *v.* CHURCHMAN.

A consignee, not a *bonâ fide* purchaser, and who has made no advances on the shipment, but
is the mere agent of a consignor who had attempted to defraud his vendor of the price of
the merchandize, has no greater rights than the vendee, and cannot defeat the vendor's
privilege, where the vendee could not.

Where, after the shipment of merchandize and the delivery of bills of lading to the shipper,
the merchandize is sequestered at the suit of the vendor claiming a privilege for the price,
and the master of the ship gives the consignee prompt notice of the sequestration, and, in
the mean time, takes such steps in the case as will arrest the action of the court until the
consignee can assert his rights, the master will be excused for not delivering the merchan-
dize, and may recover from the plaintiff in the sequestration an indemnity for his trouble
and loss in unloading the goods, &c. But where the master, as agent of the ship owners,
bonds the property, after having been notified by the sequestration that the vendor had been
defrauded, it will be his duty, on arriving at his port of destination, to inquire into the
circumstances of the consignee's title; and if he has any doubt as to it, to protect himself
by a bill calling upon the vendor, the consignor and consignee, to litigate their rights among
themselves; or, to refuse to deliver the property, if satisfied that the consignee was a mere
agent, and not a consignee for value. Where the master, in such a case, after bonding the
property, offers no proof that he has delivered the merchandize, nor that it is not still in his
possession, he will be responsible for its value; and where the sequestration is set aside for
irregularity, and no recourse can be had upon the bond, a personal judgment will be ren-
dered against him for that value.

Though a bill of lading be a negotiable instrument, and import a title to the shipment in the
holder, excusing him, as a general rule, from the necessity of proving that he has given any
value for it, yet such proof is necessary where evidence has been offered to establish the
want, or failure, or illegality of the consideration, or that the bill had been lost or stolen
before it came into the possession of the holder. In this respect the exercise of the vendor's
privilege under our Code is similar to the common law right of stoppage *in transitu*, which
can be defeated by the negotiation of the bill of lading only where the transferree has
received it in good faith and for value.

Where there was a want of due diligence on the part of one who applies for a new trial, and
the evidence to introduce which it was prayed for was not discovered after the trial, and
its character was such that the party was bound to know its materiality before the trial,
and the affidavit does not disclose enough to make out a defence, a new trial will not be
granted.

Where a writ of sequestration has been improperly issued, it cannot be aided by proof
adduced at the trial on the merits, nor by admissions of fact contained in the subsequent
pleadings, the observance of the requisites prescribed by law being in the nature of a
condition precedent.

An affidavit for a sequestration, which states that the defendant is indebted to the plaintiff
"in about the sum of $4950," and that the "deponent verily believes the defendant will
dispose of the property, or send it out of the jurisdiction of this court," not stating any specific
sum as being due, nor the apprehension of the party that the property will be removed
during the pendency of the suit, is insufficient. *Per Cur.* The word "during the
pendency of the suit" may not be sacramental; but the necessity of the conservative
process should substantially appear. Sequestrations, and other conservative remedies, by
which the property of a party is wrested from his possession and taken into the custody of
the law, before judgment, without notice, and upon the *ex parte* showing of the plaintiff,
are extraordinary and rigorous, and hence the doctrine has been uniform that they are
to be strictly construed, and that the requisites of the law must be observed upon pain of
nullity.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Hunton* and *Micou* for the plaintiffs. *Lockett* and *Goold,* for the third opponents, appellants.     The judgment of the court (*Eustis,* C. J. absent,) was pronounced by

WILSON *v.* CHURCHMAN.

SLIDELL, J. On the 5th of January, 1848, the plaintiffs made a cash sale to *Churchman* of a quantity of flour, which was delivered. *Churchman* shipped it on board a vessel commanded by *Gilchrist,* bound to Philadelphia. *Churchman* received, as shipper, a bill of lading in the usual form, for the delivery of the cargo, in Philadelphia, to *Fleming,* or his assigns. After this bill of lading was dispatched by mail to Philadelphia to the consignee, the plaintiffs commenced suit against *Churchman,* and seized the flour on shipboard at New Orleans, under a writ of sequestration and a claim of the vendor's privilege. The sequestration was levied on the 10th January, and, on the 11th, *Gilchrist,* as agent of the ship owners, gave bond for the property, and was reinstated in its possession. On the 27th of January, *Gilchrist* filed a petition, by way of third opposition, in which he alleges himself to be master and part owner of the vessel. He states that the bill of lading had been given before the sequestration, and had been forwarded to the consignee; that the plaintiffs had made no offer to return the bill of lading; that he is bound to deliver the flour at Philadelphia to the consignee, or whoever may be the holder of the bill, and is entitled to the possession and custody of the property, in preference to the plaintiffs.

The cause came to trial, as between the plaintiffs and the third opponent, on the 28th February, 1848. No application was made for a continuance. The execution of the bill of lading, and its being mailed to *Fleming's* address before the levy of the sequestration, were proved. The plaintiffs proved the sale of the flour, *Churchman's* failure to pay, and that he was in failing circumstances.

We will not undertake to enter into a general discussion of the rights and duties of shipmasters, consignors, and consignees, but will confine our opinion to the rights and duties of the parties litigant, under the peculiar circumstances presented by the record.

It is certain that the plaintiffs' goods are gone, without their having received any equivalent for them. It is also certain that, if the Philadelphia consignee was neither a *bonâ fide* purchaser nor advancer, but was the mere agent of the consignor, who has attempted to defraud his vendor, the consignee would have no greater right to defeat the vendor's privilege than the vendee himself would have had.

The vendors took the risk of the consignee's being neither a *bonâ fide* purchaser nor advancer, and caused the goods to be sequestered. The allegations of the petition gave the captain full notice that the plaintiffs had been defrauded; and the judicial process would have excused the captain to the consignee for not delivering the goods, provided he gave the consignee prompt notice of the sequestration, and took, in the mean while, such conservative steps in the cause as would arrest the action of the court until the consignee could come in and assert his rights. Unquestionably the court would have given time for that purpose upon a proper application, and would also have indemnified the captain, at the plaintiffs' expense, for his trouble and loss in unlading the goods, &c. But the captain undertakes to bond the goods, and to carry them to Philadelphia. We are not prepared to say that he had not a right to take this course. It is unnecessary to determine that point. But if he had, the question is, what he should have done when he arrived there? With full notice that the plaintiff had been defrauded,

WILSON
*v.*
CHURCHMAN.

it was his duty to inquire into the circumstances of the consignee's title and rights. If he had doubts as to those rights, he might probably have been permitted to protect himself by a bill of interpleader, calling upon the plaintiffs, the consignor and consignee to litigate *inter se.* Or he could have refused to deliver the goods, if satisfied upon inquiry that the consignee was a mere agent, and not a consignee for value. But the captain has not thought proper to show that he took any precaution whatever; or even that he has delivered the goods at all. *Non constat,* that they are not still in his possession. At any rate, if he has delivered the goods to the consignee, he has not offered any evidence whatever to show that the consignee was rightfully entitled to receive them, as against the plaintiffs.

Under these circumstances, we think that the case is with the plaintiffs; and that the captain has no right to rely upon the naked fact that, he had signed and issued a bill of lading.

It is said that a bill of lading is a negotiable instrument, and imports a title to the goods in the holder of it. But must this be taken without qualification? A bill of exchange is a negotiable instrument, and the holder is *prima facie* a holder for value. He is not bound to establish that he has given any value for it, until the other party has established the want, or failure, or illegality of the consideration; or that the bill had been lost or stolen before it came into the possession of the holder. It is then incumbent on him to show that he has given value; for, under such circumstances, if he has not given value he ought not to be placed in a better situation than the antecedent parties through whom he obtained the bill. See Story on Bills, § 193.

So in the case of a bill of lading. The plaintiff having established his claim as vendor, the bad faith of the vendee, and a clear right to the vendor's privilege if *Churchman's* interest had not been divested in favor of *Fleming* for value given *bonâ fide, Fleming,* in a contest with the plaintiff, would have been driven to show the nature and circumstances of his interest.

By what right can the captain undertake *Fleming's* case, and claim to stand in a better position? His argument for withholding the goods from the plaintiffs is, that he has signed a written promise to deliver them to *Fleming*; but, if *Fleming* was in bad faith, or was a mere agent, he could not have succeeded in doing what the captain insists upon doing for him.

It is very true that the right of stoppage *in transitu,* under the law merchant, which bears, in some respects, a strong analogy to the exercise of the vendor's privilege under our Code, is defeated by the negotiation of the bill of lading. But this rule must be understood with this qualification, that the transferee has received it in good faith and for value.

In *Cumings* v. *Brown,* Lord Ellenborough said that, if the assignee of the bill of lading knew that the consignee was in insolvent circumstances, and that no bill had been accepted by him for the price of the goods, or that, being accepted, it was not likely to be paid, in that case the interposition of himself between the consignor and consignee, in order to assist the latter to disappoint the just rights and expectations of the former, would be an act done in fraud of the consignor's right to stop *in transitu,* and would therefore be unavailable to the party taking the bill of lading under such circumstances, and for such purpose. He recognized, as the true criterion, that suggested by Mr. Justice Buller—does the purchaser take it fairly and honestly? See also Eden on Bankruptcy, 313 *et seq.* See *Lickbarrow* v. *Mason,* Smith's Leading Cases, 507. *Cumming* v. *Brown,* 9 East, 514. *In re Wisbyinthus,* 5 B. and Ad. 817. 3 Kent's Com. 216. Abbott on Shipping, 514 *et seq.*

The court below gave judgment dismissing Gilchrist's opposition, and a motion was made by him for a new trial, which he accompanied by affidavit that he arrived at the port of New Orleans, on his return from Philadelphia, a few hours after the trial of the cause; that he could prove by a witness at Philadelphia, that he had delivered the flour to *Fleming*, who had received the bill of lading in due course of mail, and accepted bills to the amount of $3000 ; that he had not discovered the materiality of this testimony until after his arrival here, and had no representative here who knew the facts. The affidavit referred to a certificate by the proposed witness, who states that he was in the employ of *Fleming* ; that the letter enclosing the bill of lading was received in due course of mail, and that *Fleming* accepted drafts for $3000, drawn against the shipment. The new trial was refused.

We cannot with propriety interfere with the ruling of the court below, nor say that the discretion which the law confers with regard to new trials, was improperly exercised. There was a want of due diligence. The testimony itself was not discovered after the trial. Its materiality the party was bound to know before he went to trial, and he might have asked a continuance. Besides, the affidavit does not disclose enough to make out a defence. It is not stated *when Fleming* made the advances, nor that they were made in good faith and before notice. *Non constat*, that the consignee involved himself before *Gilchrist* arrived at Philadelphia with the goods. It would be a very dangerous precedent to reverse a judgment and remand a cause for new trial on so loose a showing. There may be hardship in this case ; but if there be, it must be attributed to the party's want of diligence and caution. We cannot break down well settled and wholesome rules of practice, in order to reach the supposed hardship of a particular case. It is proper also to observe that the third opponent, on his part, has held the plaintiff to strict practice.

It remains only to consider the correctness of the refusal of the District Court to set aside the sequestration.

For the purposes of this inquiry it is necessary to lay out of view the subsequent testimony in this cause, and to look only to the proceedings which preceded the levy of the writ. If the writ improperly issued, it cannot be aided by the proof adduced at the trial on the merits, nor even by the admissions of fact contained in the subsequent pleadings, the observance of the requisites prescribed by law being in the nature of a condition precedent. It is proper to add that there was no implied waiver of irregularities, the rule to set aside having been taken *in limine litis*.

The grounds of the rule were that the affidavit is insufficient, the party not swearing to any specific sum as being due, nor to his apprehension that the property would be removed during the pendency of the suit. The affidavit is in the following words :

" *George W. Wilson*, one of the firm of *Wilson & Gleason*, merchants, trading and residing in the city of New Orleans, being duly sworn, deposes and says that *Samuel Churchman*, merchant, trading and residing in the city of New Orleans, is justly and truly indebted to the said firm of *Wilson & Gleason* in about the sum of forty-nine hundred and fifty dollars, for this, to wit : On the 6th day of January, 1848, *Wilson & Gleason* sold to the said *Samuel Churchman*, through his broker, about nine hundred barrels of flour, at five dollars and fifty cents per barrel ; the said flour so sold has been delivered, and payment for the same has not been made. Wherefore deponent prays, in consideration of lien or privilege, that the said *Wilson & Gleason* have as vendors of the property sold, that a writ of

WILSON
*v.*
CHURCHMAN.

sequestration issue, and the said flour so sold be sequestered, as deponent verily believes the said *Churchman* will dispose of the same, or send it out of the jurisdiction of this court."

It will be observed that, the amount sworn to is not a sum certain, and that the necessity of a sequestration for the protection of the parties privilege, is not clearly deducible from the language used. It was correctly said in *Sellick* v. *Kelly*, 11 Rob. 149, that it is not the mere existence of a privilege that gives the right of sequestering property; there must be also a well founded apprehension that the party will be deprived of its exercise, unless aided by the process of the court. If there is not danger that the property will be removed before the party can have the benefit of his privilege, the writ ought not to issue, and the existence of this danger should appear from the affidavit. We are not prepared to say, that the party should in this particular case, have sworn *totidem verbis*, that he feared the property would be disposed of, or removed, "during the pendency of the suit." Those expressions may not be sacramental under the Code and statutes in this particular case, but the necessity of the conservative process should substantially appear. The affidavit does not say when *Churchman* will dispose of the property, or send it out of the jurisdiction of the court. The affidavit would be consistent with truth, even if, at the time, the plaintiff was convinced that the property would not be disposed of, or sent away, before a judgment could be obtained and a *fieri facias* issued. Nor is this uncertainty cured, but, on the contrary, it is increased, by considering the context of the affidavit. *Non constat*, that the price was due, or even if due, that it had never been demanded. The whole showing is loose and uncertain.

Sequestrations and other conservative remedies by which the property of a party is wrested from his possession, and taken into the custody of the law, before judgment, without notice, and upon the *ex parte* showing of the plaintiff, are extraordinary, and rigorous, and hence the doctrine has been uniform, that they are to be strictly construed, and that the requisites of the law must be observed on pain of nullity. *Graham* v. *Burckhalter*, 2 Annual 415. *Bres* v. *Booth*, 1 Annual, 308. *Friedlander* v. *Myers*, 2 Annual, 920. *Sellick* v. *Riley*, 11 Rob. 158. *Lacey* v. *Kenley*, 3 La. 18.

As we deem it our duty to set aside the sequestration, and the plaintiffs are thus deprived of a recourse upon the bond, it is necessary to make provision for a personal recourse upon the third opponent, and we shall do so, by remanding the cause for the purpose of ascertaining the value of the flour at the date of the bonding, and for the rendition of a judgment accordingly against the third opponent.

It is therefore decreed that, the judgment dismissing the opposition of *Gilchrist* be affirmed. It is further decreed that, the judgment on the rule to set aside the sequestration be reversed, and that the said sequestration be set aside ; the costs of the sequestration, of said rule, and of this appeal, to be paid by the plaintiffs. It is further decreed that, this cause be remanded for the sole purpose of ascertaining the value of the flour sequestered at the date of the bonding thereof by said *Gilchrist*, and of rendering judgment for such value, in favor of said plaintiffs, against said *Gilchrist*, with interest from the date of such bonding and costs, subject to credit for such portion of the price of said flour as the said plaintiffs may have received from *Churchman*.