## Case No. 4,836.

### FITCH v. REMER.

[1 Flip. 15;[1] 1 Biss. 337; 8 Am. Law Reg. 654; 5 Quart. Law J. 266.]

Circuit Court, D. Michigan. July Term, 1860.

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

Mr. Duffield, for complainant.
Mr. Lathrop, for defendants.

McLEAN, Circuit Justice. This bill was filed to foreclose a mortgage. When the mortgage was executed, Fitch resided in New York, the defendants in the state of Michigan. On the first of January, 1850, the complainant loaned to the defendants two thousand dollars, to secure which the defendants executed a bond and mortgage on land in Michigan. The sum loaned was to be paid in January, 1856, to the complainant, at his residence in the state of New York, with interest at ten per cent. per annum, payable semi-annually.

In New York the legal interest is seven per cent. per annum, and any per cent. above that sum is usurious, and the instrument is declared to be void. In Michigan there is no penalty for usury, the excess over the legal rate, only, being recoverable.

It is agreed that this proceeding to enforce these securities must be under the laws of New York or the laws of Michigan, whichever shall be held to be the law of the contract. This is the only question in the case, there being no dispute about the facts.

The general rule is, that the contract, in respect to its construction and force, is to be governed by the law of the country or state in which it is to be executed. Kent, Comm. 459; Story, Confl. Laws, § 242. In Van Reimsdyk v. Kane [Case No. 16,871], Judge Story says the rule is well settled, "that the law of the place where a contract is made is to govern as to the nature, validity and construction of such contract," unless it shall appear from the tenor of such contract, it was entered into with a view to the laws of some other state; as where a negotiable note was indorsed in a state different from that in which it was made. Slacum v. Pomery, 6 Cranch [10 U. S.] 221. Lord Mansfield, in Robinson v. Bland, 2 Burrows, 1077, says, "The law of the place can never be the rule, where the transaction is entered into with an express view to the law of another country." And Kent, C. J., in 1 Johns. 92, said, "The force and effect of the contract must be determined from the contract itself, and not by proof aliunde."

Huberus, in his De Conflictu Legum (volume 2, bk. 1, tit. 3), says, "The general rule is, that contracts are to be interpreted according to the laws of the country where they are made; but if, from the terms or nature of the contract, it appears it was to be executed in a foreign country, or that the parties had respect to the laws of another country, then the place of making the contract becomes immaterial, and the obligation must be tested by the laws of the country where the duty was to be performed." In Champant v. Ranelagh, Finch, Prec. 128, it was decided that a bond executed in England, and made payable in Ireland, carries Irish interest, where no interest was mentioned. Fanning v. Consequa, 17 Johns. 511. In Robinson v. Bland, 2 Burrows, 1077, a bill of exchange drawn in France for money lent there, and made payable in England, was deemed a contract subject to the laws of England, and to bear English interest. In Thompson v. Ketcham, 4 Johns. 285, a note was drawn in Jamaica, made payable in New York, and the supreme court of New York followed the same rule. In Smith v. Smith, 2 Johns. 235, Ruggles v. Keeler, 3 Johns. 263, and Van Schaick v. Edwards, 2 Johns. Cas. 355, the same doctrine was carried out.

A contract is to be construed by the law under which it was made, but if entered into to be performed in another state or place, it is to be treated, generally, as to its force and effect, by the laws of the latter place; and it will be good or bad according to the laws of such place. To this there is an exception in regard to official bonds, taken in pursuance of an act of congress, which are not subject to the local law, but are assumed to have been executed at the seat of the federal government. Cox v. U. S., 6 Pet. [31 U. S.] 173; Andrews v. Pond, 13 Pet. [38 U. S.] 77; Bell v. Bruen, 1 How. [42 U. S.] 169; Brabston v. Gibson, 9 How. [50 U. S.] 263; Fanning v. Consequa, 17 Johns. 511; Ruggles v. Keeler, 3 Johns. 263; Thompson v. Ketcham, 4 Johns. 285; Barney v. Newcomb, 9 Cush. 46; Story, Confl. Laws, § 280; Story, Bills, § 147; Robinson v. Bland, 2 Burrows, 1077.

Under the principles laid down in the above authorities, it is insisted that the instrument before us is a New York contract, and that the agreement to pay more than seven per cent. interest is usurious and void; and as the contract binds the defendant to pay the complainant, in New York, interest at the rate of ten per cent. per annum, semiannually, and the loan at the end of six years, the argument is presented with great force against the legal rights of the complainant; and this contract, it is urged, is to be governed by the law of the place of performance, and whatever shall be a good defense there shall be good everywhere. This doctrine is laid down in Story on Conflict of Laws, §§ 331, 305, and Story on Bills of Exchange, § 161. And it is admitted, that where a contract is made in one place, payable in another, without fixing the rate of interest, such rate is determined generally by the laws of the latter place. Scofield v. Day, 20 Johns. 102; De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367; Healy v. Gorman, 3 J. S. Green [15 N. J. Law] 328.

And it is admitted by the highest authority,

that any interest may be lawfully stipulated for, not exceeding the law of the place where the instrument is payable. Andrews v. Pond, 13 Pet. [38 U. S.] 77; Thompson v. Ketcham, 4. Johns. 285; Robb v. Halsey, 11 Smedes & M. 140.

These concentrated authorities seem to cover the whole ground of controversy, leaving but little for doubt or speculation. Principles are sometimes evolved from the exigencies of society, and grow into favor from their adaptation to the fitness of things. No one can say that both the common and civil law have not been ameliorated and improved by such means. But we are to look to established principles and not to theories in considering the case before us.

The debt is founded upon a bond and mortgage for the payment of two thousand dollars, executed on land in Michigan, by the defendant to the complainant, a citizen of New York, payable in six years at the rate of ten per cent. per annum semi-annually, on the first days of July and January, to the complainant, at his residence in New York.

In 2 Kent, Comm. 460, it is said: "If, however, the rate of interest be specified in the contract, and it be according to the law of the place where the contract was made, though that rate be higher than is lawful by the law of the place where payment was to be made, the specified rate of interest at the place of the contract has been allowed by the courts of justice in that place; for that is part of the substance of the contract. The general doctrine is, that the law of the place where the contract is made is to determine the rate of interest when the contract specifically gives interest; and this will be the case though the loan be secured by a mortgage on lands in another state, unless there be circumstances to show that the parties had in view the laws of the latter place in respect to interest. When that is the case, the rate of interest of the place of payment is to govern." De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367; Quince v. Callender, 1 Desaus. Eq. 160.

"With respect to the question of usury, in order to hold the contract to be usurious it must appear that the contract was made here, and that the consideration for it was to be paid here. It should appear, at least, that the payment was not to be made abroad; for if it was to be made abroad, it would not be usurious." Thompson v. Powles, 2 Sim. 211.

In reference to the above cited case, Chancellor Kent says (volume 2 of his Commentaries, 461): "According to the case of Thompson v. Powles [2 Sim. 194], it is now the received doctrine at Westminster Hall, that the rate of interest on loans is to be governed by the law of the place where the money was to be used or paid, or to which the loan has reference; and that a contract made in London to pay in America, at a rate of interest exceeding the lawful interest in England, was not a usurious contract, for the stipulated interest was parcel of the contract." This appears to be a liberal relaxation of the rigor of the former rule in the English courts, and it is comformable to the American cases. Story, Confl. Laws, § 305.

In the somewhat noted case of Depau v. Humphreys, 8 Mart. (N. S.) 1, the note was given in New Orleans, payable in New York, for a large sum of money, bearing an interest of ten per cent., being the legal interest in Louisiana, the New York legal interest being seven per cent. only. The question was whether the note was tainted with usury, as it would be, if made in New York. The supreme court of Louisiana decided that it was not usurious; and that although the note was made payable at New York, yet the interest might be stipulated for, either according to the law of Louisiana or according to that of New York. To the same import are the cases of Peck v. Mayo, 14 Vt. 33; and Chapman v. Robertson, 6 Paige, 627. In Pratt v. Adams, 7 Paige, 615, the court says. "If the contract was not illegal by the laws of the country where it was made, and where the money was loaned, the fact that the drafts were payable in New York would not render them void under our usury laws, except in a case where the loan of the money out of this state was a mere device to evade the operation of the law of this state which was intended as a cover for usury." The doctrine is well established, if a mortgage be executed in Michigan, which is the domicil of the mortgagor, at the legal rate of interest, full effect will be given to the security without reference to the usury laws of any other state, which neither party intended to violate. In Andrews v. Pond, 13 Pet. [38 U. S.] 78, the court says, "The general principle in relation to contracts made in one place to be executed in another, is well settled. They are to be governed by the law of the place of performance; and if the interest allowed by the laws of the place of performance is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury."

By the statute of Michigan, ten per cent. was the legal rate of interest, and this was the amount stipulated to be paid, and constituted a part of the contract; the court cannot presume, therefore, against the fact, that usury under the New York statute was intended.

In Ohio Ins. Co. v. Edmondson, 5 La. 295, 299, 300, the court says, "By the comity of nations a practice has been adopted, by which courts of justice examine into, and enforce contracts made in other states, and carry them into effect according to the laws of the place where the transaction took its rise. This practice has become so general in modern times, that it may be almost stat-

ed to be now a rule of international law, and it is subject only to the exception, that the contract to which aid is required, should not, either in itself or in the means used to give it effect, work an injury to the inhabitants of the country where it is attempted to be enforced." Story, Confl. Laws, § 244.

In Chapman v. Robertson, 6 Paige, 633, the court said, "I have arrived at the conclusion, that this mortgage, executed here, and upon property in this state (New York), being valid by the lex situs, which is also the law of the domicil of the mortgagor, it is the duty of this court to give full effect to the security."

If no place of payment is prescribed, the contract takes effect as a contract of the place where it is made; and being payable generally, it is payable everywhere. and after a demand and refusal of payment, interest will be allowed according to the law of the place of the contract. But if the place of payment or of performance is different from that of the contract, then the interest may be validly contracted for at any rate not exceeding that which is allowed in the place of payment or performance.

"Whether a contract is usurious or not, depends, not upon the rate of interest allowed, but upon the validity of that interest in the country where the contract is made, and is to be executed. A contract made in England for advances to be made at Gibraltar, at a rate of interest beyond that of England, would nevertheless, be valid in England; and so a contract to allow interest upon credits given in Gibraltar at such higher rate would be valid in favor of the English creditor." Story, Confl. Laws, § 292.

In his Conflict of Laws (section 488), Mr. Justice Story says, "Boullenois has no where to my knowledge, directly and positively treated the question, whether the interest may be stipulated for according to the place of the contract, when payment is to be made in another place where it would be illegal." In section 304a, he says, "If the transaction is bona fide and not with intent to evade the law against usury, and the law of the place of performance allows a higher rate of interest than that permitted at the place of the contract, the parties may lawfully stipulate for the higher rate of interest." No one ever doubted this. The daily experience of every business man shows that a note is legal, if given for a rate of interest fixed by law in any state where it is payable. In Michigan, ten per cent. is the legal rate of interest, and may be recovered.

Mr. Justice Story objects to the principle here laid down. and there is no jurist in America or in England, of higher authority. He admits in section 299, that the phrase "lex loci contractus" may have a double meaning or aspect; and that it may indifferently indicate where the contract is actually made, or where it is virtually made, according to the intent of the parties, that is, the place of payment or performance. And he says, "We have seen that the rule of the civil law clearly indicates this."

No one can suppose that a contract can be distributed into parts, and so made good for the whole, but that the clear intention of the parties may be understood and applied; as where the legal rate of interest stipulated to be paid is higher where the contract is entered into than at the place of payment, the higher rate may be presumed to be within the intention of the parties.

If the transaction is bona fide and not with intent to evade the law against usury, and the law of the place of performance allows a higher rate of interest than that permitted at the place of the contract, the parties may lawfully stipulate for the higher interest. But then the transaction must be bona fide, and not intended as a mere cover for usury. Andrews v. Pond, 13 Pet. [38 U. S.] 65. Mr. Chancellor Kent has correctly laid down the modern doctrine; and he is fully borne out by the authorities. "The law of the place," says he, "where the contract is made, is to determine the rate of interest, when the contract specifically gives interest; and this will be the case, though the loan be secured by a mortgage on land in another state, unless there be circumstances to show that the parties had in view the laws of the latter place in respect to interest. When that is the case, the rate of interest of the place of payment is to govern." 2 Kent, Comm. 460; De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367; Scofield v. Day, 20 Johns. 102; Thompson v. Powles, 2 Sim. 194.

It is agreed that the above loan was made in this manner: "An agent of the complainant, Mr. Loomis, residing in St. Clair county, drew a draft on the complainant, caused the same to be cashed at a bank in the city of Detroit, and paid the proceeds over to said Remer, at said St. Clair; the bond and mortgage were executed at St. Clair, on real estate in said county of St. Clair, and delivered to said Loomis at that place, as the agent of complainant."

It is also agreed, that by the laws of the state of New York, in force at the time of making said loan, and ever since in force, the taking more than seven per centum per annum upon any loan of money was prohibited, and any contract or security made or taken in violation thereof, was by such laws void.

Now, that this was a perfectly fair transaction, understood by the parties, no one can question. The contract was valid under the laws of Michigan, unaffected by any taint of usury. No deception was practiced. The contract can be legally enforced in Michigan; and this suit is now brought to enforce it. There is not a circumstance to show that the parties had in view any other rate of interest than that which was

stipulated in the contract. And if that rate of interest cannot be recovered under the laws of New York, no one doubts that it may be recovered in the state of Michigan, where the contract was made. In Andrews v. Pond, 13 Pet. [38 U. S.] 78, the supreme court says: "If the interest allowed by the laws of the place of performance is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury." And the court says, taking eight per cent. in Alabama is no violation of the New York law.

The bond and mortgage are valid under the Michigan law, and the complainant elects, as he has a right to do, that he will proceed under the Michigan statute. And it is difficult to perceive on what ground the defendant can complain that his rights are affected by the usury law of New York. The ten per cent. interest which the defendant agreed to pay, was a part of the contract authorized by the laws of Michigan, and this contract is not supposed to be impaired by an agreement to pay the same rate of interest in New York. The mortgagee claims the ten per cent. interest, under the Michigan law, and this he is entitled to.